UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREW ABTS, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:19-CV-02768 JCH |
| | ) |
| MERCY HEALTH, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Mercy Health and Mercy Hospital Jefferson's ("Mercy" or collectively "Defendants") partial motion to dismiss Counts II and III of Plaintiff Andrew Abts's ("Abts" or "Plaintiff"), complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Doc. [6]. Plaintiff responded to the motion (Doc. [14]), Defendants filed a reply (Doc. [15]), and the matter is fully briefed and ripe for disposition. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

**I.     Factual and Procedural Background**

Taken as true for the purpose of this motion, the facts alleged in the amended complaint are as follows. Plaintiff was a full-time employee of Mercy Hospital Jefferson from 2004 until his termination on November 2, 2017, where he first worked as a nurse, then as a patient advocate, and finally as the manager of the Progressive Care Unit ("PCU"). Plaintiff was promoted to a managerial position within the PCU in February 2016, pursuant to which Mercy required him to obtain a bachelor's degree. Plaintiff enrolled in classes at Central Methodist University, and Mercy covered his tuition for the program. After Plaintiff's promotion to manager, his supervisor was Krista McKenzie, the Director of Nursing Services ("McKenzie").

In the spring of 2016, Plaintiff took an eight-week leave under the Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"), in order to care for and bond with his newborn child.  The hospital was understaffed during Plaintiff's leave of absence, and McKenzie had to take on duties that would have been performed by Plaintiff had he been on site.  When Plaintiff returned from leave, McKenzie was newly critical of both his work performance and his habit of wearing formal business suits to work.  On December 6, 2016, Plaintiff was placed on a performance improvement plan ("PIP") that identified four goals, including (1) the timely completion of all weekly and monthly expectations, (2) assuring that coworkers' schedules were consistent and met PCU expectations, (3) completing all "My Education" modules before their due date, and (4) working on "the building of right relationships with [McKenzie] and other members of the leadership team." (Doc. 1 at 5).  Plaintiff believes that McKenzie placed him on a PIP because she was upset with him for taking leave.  Plaintiff successfully completed the requirements in the PIP, and was no longer subject to the plan as of the end of 2016.  In July of 2017, Plaintiff received his annual review, in which McKenzie stated that Plaintiff's performance was "above par" and that in his transition to manager, he was "ahead of the curve." (Doc. 1 at 6).  Plaintiff received an annual raise based on his 2017 review.

In March of 2017, Plaintiff learned that his wife was once again pregnant, and informed McKenzie of the pregnancy and of his intention to again exercise his FMLA rights to take an eight-week leave.  In August of 2017, Plaintiff informed McKenzie that his baby would be delivered by scheduled C-section on September 29, 2017, and he would take leave following the delivery.  McKenzie told Plaintiff that she had "serious concerns about the length of time [he was] taking off." (Doc. 1 at 7).

On September 26, 2017, Plaintiff submitted his official FMLA Leave of Absence Request Form, which indicated the reason for leave as "Paternity."  Mercy issued a Notice of Eligibility and Rights & Responsibilities ("Notice") on October 1, 2017, and Plaintiff's official FMLA leave commenced on October 2, 2017.  The Notice indicated that Plaintiff was eligible for FMLA leave, and required that Plaintiff provide, by no later than October 15, 2017, a "Leave of Absence Request Form," and a "sufficient Medical Leave Certification of Health Care Provider Form."  (Doc. 1 at 8).  Plaintiff had already provided the Leave of Absence Request Form.  Plaintiff alleges that he did not have to provide the requested Medical Leave Certification of Health Care Provider Form, because while such form is required when an eligible employee seeks FMLA leave due to a serious health condition, the FMLA prohibits an employer from requiring such a certification when an employee takes leave in order to bond with and care for a child after its birth.

On October 26, 2017, Mercy sent to Plaintiff a notice that his leave would not be designated as FMLA leave, because he "did not submit complete and sufficient documents within the established timeframe."  (Doc. 1 at 10).  On November 2, 2017, Mercy terminated Plaintiff's employment.  In the letter informing Plaintiff of his termination, Mercy identified four reasons for the termination: (1) that "33 of [his] 45 direct reports did not have their AoS completed;" (2) "[f]ailure to properly document co-worker corrective actions;" (3) "[m]anipulation of co-worker schedules in an effort to give them increased incentives that their skills did not warrant;" and, (4) [n]ot following the leave process and being on an unapproved leave for 30 days." (Doc. 1 at 11).

Plaintiff asserts that the second and third of the stated reasons were addressed in his PIP and had not arisen after his successful completion of the same, and that he had not received any

3

previous corrective action concerning the first stated reason for termination.  Therefore, Plaintiff argues that the first three stated reasons for termination were pretextual, and otherwise "insufficient and inappropriate to justify termination" under Mercy's Corrective Action Policy. (Doc. 1 at 12).

Mercy, after Plaintiff's termination, demanded that Plaintiff reimburse it for tuition paid to Central Methodist University on Plaintiff's behalf.  Prior to his termination, Plaintiff had accumulated $6,297.83 in paid time off hours, which Mercy retained as partial offset for the tuition expenses it claims Plaintiff owed.

Plaintiff filed this three Count Complaint on October 11, 2019.  Count I is an FMLA interference claim, in which Plaintiff asserts that Mercy wrongfully denied his FMLA leave request.[1]  Count II is for FMLA retaliation, in which Plaintiff asserts that his termination was "causally related to his FMLA leave request."  (Doc. 1 at 16).  Count III is a common law wrongful discharge claim in which Plaintiff asserts that Mercy terminated him in violation of public policy.

Defendants filed the instant motion to dismiss Counts II and III on December 13, 2019. In support of its motion, Mercy argues that Count II must be dismissed for failure to state a claim because Plaintiff does not assert facts that support an FMLA retaliation claim.  Defendants assert that Count III fails as a matter of law, because in 2017 the Missouri legislature explicitly abrogated common law wrongful discharge claims.  In support of its argument, Defendant cites to Sections 213.070.2 and 285.575.3 of the Missouri Revised Statutes.  Section 213.070.2 states,

---

[1]    Plaintiff fashions his claim in Count I as an "interference" claim.  However, the Eighth Circuit has instructed that the type of FMLA claim "formerly described as 'interference claims henceforth shall be called 'entitlement' claims." *Bosley v. Cargill Meat Solutions Corp.*, 705 F.3d 777, 780 (8th Cir. 2013).  Accordingly, in all further discussion of Count I, the Court will refer to Plaintiff's claim as an entitlement claim.

4

"This chapter, in addition to chapter 285, shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship." Section 285.575.3 states that "[t]his section, in addition to chapter 213 . . . shall provide the exclusive remedy for any and all claims of unlawful employment practices."

## II.     Legal Standard

Defendant has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

5

*Id*. (quoting *Twombly*, 550 U.S. at 556).  The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory," and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [each element]." *Twombly*, 550 U.S. at 562.  The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions that plaintiff draws from the facts alleged.  *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).  A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.  *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

**III.   Discussion**

  **A.  FMLA Retaliation Claim—Count II**

In Count II of his complaint, in which he purports to bring a claim for FMLA retaliation, Plaintiff asserts that his termination was "causally related to his FMLA leave request."  (Doc. 1 at 16).  Defendants argue that Count One must be dismissed because Plaintiff has failed to state a claim for retaliation under the FMLA.

The FMLA entitles eligible employees to twelve work weeks of leave per year for specified reasons.  *See* 29 U.S.C. § 2612(a)(1); *Hasenwinkel v. Mosaic,* 809 F.3d 427, 431–32 (8th Cir. 2015).  Two subsections of the statute establish prohibited acts: "Section 2615(a)(1) 'makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights provided under the FMLA,' and section 2615(a)(2) 'makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for

opposing any practice made unlawful" by the FMLA.' " *Brown v. Diversified Distrib. Sys.*, LLC, 801 F.3d 901, 907 (8th Cir. 2015) (quoting *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012)).  In the Eighth Circuit, courts " 'recognize[ ] three types of claims arising under these two subsections'— entitlement, discrimination, and retaliation claims." *Id*.

In order to state a claim for retaliation under the FMLA, a plaintiff must allege that he opposed any act or practice made unlawful under the FMLA, or complained about a refusal of FMLA leave.  *See Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1005 (8th Cir. 2012) ("If an employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave—then the employer may not for that reason take adverse action against the employee who is engaged in the opposition.").  Because Plaintiff does not allege any facts about opposing or complaining about any practice unlawful under the FMLA prior to his termination, or that he was retaliated against for doing so, Defendants argue, Count II must be dismissed.

In his memorandum in opposition to Defendants' partial motion to dismiss, Plaintiff concedes that Count II fails to state a claim for FMLA retaliation.  However, Plaintiff argues that this was merely a matter of mislabeling his claim.  He asserts that Count II of his complaint adequately pleads a claim for discrimination[2] under the FMLA, and therefore, Defendant's motion to dismiss Count II must be denied. In support of his position, Plaintiff cites to several Eighth Circuit cases in which the court states that federal district courts should look to the substance of a complaint rather than the label affixed to a claim when evaluating a motion to

---

[2]   To establish a prima facie case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action. *Brown*, 801 F.3d at 908.

7

dismiss for failure to state a claim, and approves the practice of relabeling claims when appropriate. *See Jackson v. City of Hot Springs*, 751 F.3d 855, 858, n. 1 (8th Cir. 2014) (finding that Plaintiff's "retaliation" claim was more appropriately characterized as one for "discrimination"); *Lovelace v. Washington Univ. Sch. Of Med.*, 931 F.3d 698, 705 (8th Cir. 2019) (same); *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1016 (8th Cir. 2013) (re-characterizing Plaintiff's retaliation claim as a "discrimination" claim); *Curtis v. Nucor Corp.*, 713 F. App'x 520, 521 (8th Cir. 2018) (approving the district court's relabeling of plaintiff's claim from "retaliation" to the more accurate "discrimination").

      Defendants, in their reply to Plaintiff's opposition to their partial motion to dismiss, state that they do not oppose Plaintiff's request that his claim in Count II be deemed one for FMLA discrimination, rather than retaliation. Mercy requests, though, that to the extent Count II may be construed to be a retaliation claim, it be dismissed. The Court agrees that to the extent Plaintiff's claim in Count II may be read or construed as one for FMLA retaliation, it fails to state such a claim. However, it appears to the Court that this defect in Count II is confined to the heading that labels the Count as one for "retaliation." The substance of Plaintiff's allegations in Count II contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face for FMLA discrimination. As noted *supra*, to state a claim for FMLA discrimination, a plaintiff must allege: (1) that he engaged in an activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action. *Brown*, 801 F.3d at 908. Plaintiff alleges that he sought to take FMLA leave to bond with his newborn child, that he was terminated, and that his termination was causally related to his FMLA leave request. This is sufficient to state a claim for FMLA discrimination.

The Court may, sua sponte, strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Impertinent" matters consist of statements that do not pertain, and are not necessary, to the issues in question. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Striking such matter is appropriate if it may have the effect of making the action less complicated, or otherwise streamlines the issues material to the action. *Kramer & Frank, P.C. v. Wibbenmeyer*, No. 4:05-CV-2395 (EWS), 2006 WL 30790907, *2 (E.D. Mo. Oct. 27, 2006). Because both parties agree that the reference to "retaliation" in Plaintiff's complaint is not relevant to the issues raised in Count II, the Court will strike the impertinent reference to "retaliation" in Count II, and the count formerly titled "Count II—FMLA Retaliation" shall be retitled "Count II—FMLA Discrimination."

### B. Common Law Wrongful Termination Claim—Count III

In Count III of his complaint, Plaintiff purports to bring a common law claim for wrongful termination in violation of public policy. Defendants assert, in their partial motion to dismiss, that such claims have been statutorily abrogated by the Missouri legislature. Defendants, in support of their argument, state that in 2017 the Missouri legislature passed a statute that explicitly abrogated and superseded common law wrongful discharge claims. For this reason, Defendants argue, Plaintiff's claim for common law wrongful termination in Count III must be dismissed.

The general rule in Missouri "is that an at-will employee may be terminated for any reason or no reason[.]" *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. banc 2010). Certain exceptions to this general rule were carved out by the courts over the years, including a public-policy exception which prohibits termination of an at-will employee for either: (1) "refusing to violate the law or any well- established and clear mandate of public

policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body"; or (2) "reporting wrongdoing or violations of law to superiors or public authorities, also known as 'whistleblowing.'" *Newsome v. Kansas City, Mo. Sch. Dist.*, 520 S.W.3d 769, 777 (Mo. banc 2017) (quoting *Fleshner*, 304 S.W.3d at 92).

In 2017, the Missouri legislature amended various subsections of the statutes related to unlawful employment practices. Missouri Revised Statutes Section 214.070.2, as amended, states that, "[t]his chapter, in addition to chapter 285 and chapter 287, shall provide the exclusive remedy for any and all claims for injury or damages arising out of employment relationship." Missouri Revised Statutes Section 285.573.3 now states, "[t]his section is intended to codify the existing common law exception to the at-will doctrine and to limit their future expansion by the courts. This section, in addition to chapter 213 and chapter 287, shall provide the exclusive remedy for any and all claims of unlawful [employment] practices."

Defendants argue that Plaintiff's claim for common law wrongful discharge in violation of public policy must fail, as it falls outside the exclusive statutory remedies delineated in chapters 213 and 287 of the Missouri Revised Statutes. The Court agrees. The Missouri legislature was explicit in its intent for this legislation to supplant common law wrongful discharge actions. In two recent cases in this district, the federal district court acknowledged the applicability of the newly established exclusive statutory remedies, and accordingly, dismissed the plaintiffs' purported common law wrongful discharge claims. *See Mucci v. St. Francois County Ambulance District*, 2019 WL 6170721, at *5 (E.D. Mo. Nov. 20, 2019) (dismissing common law wrongful discharge claim because the Missouri legislature explicitly replaced such common law cause of actions); *Huskey v. Petsmart, Inc.*, 2019 WL 122873, at *2 (W.D. Mo. Jan. 7, 2019) (The statute "specifies that it and two other enumerated

10

statutes 'shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship.' In other words, in Missouri, damages arising from the employment relationship cannot be redressed except through the specified statutes."). Count III is precisely the sort of claim explicitly abrogated by statute, and is therefore barred by Missouri law and must be dismissed.[3]

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to Fed. R. Civ. P. 12(b)(6), Defendant's Motion to Dismiss Count II—FMLA Retaliation of Plaintiff's complaint is **DENIED**.

**IT IS FURTHER ORDERED** that the count Plaintiff's Complaint formerly titled "Count II—FMLA Retaliation" shall be retitled "Count II—FMLA Discrimination."

**IT IS FINALLY ORDERED** that Defendants' motion to dismiss Count III—Wrongful Termination is **GRANTED**.

An appropriate Partial Order of Dismissal shall accompany this Memorandum and Order. Dated this 8th day of May, 2020.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE

---

[3] While the bar against common law claims in Mo. Rev. Stat. § 285.575.3 is an affirmative defense, the Court can nonetheless dismiss Count III for failure to state a claim for which relief may be granted "if an affirmative defense is apparent on the face of the complaint." *Midwest Neurosurgeons, LLC v. Wright*, 2018 WL 4279448, at *2 (E.D. Mo. Sept. 5, 2018). Here, it is clear from the face of Plaintiff's Complaint that Count III is a common law claim now barred by Missouri statute, so dismissal is appropriate.