UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANDREW ABTS,                              )
                                          )
                                          )
        Plaintiff,                        )
                                          )
        vs.                               )          Case No. 4:19-CV-02768 JCH
                                          )
MERCY HEALTH, et al.,                     )
                                          )
        Defendants.                       )

**MEMORANDUM AND ORDER**

In this action, Plaintiff Andrew Abts alleges that Defendants Mercy Hospital Jefferson and

Mercy Health ("Defendants" or collectively, "Mercy") violated his rights under the Family and

Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.  Defendants now move for summary

judgment (Doc. 46) and, for the reasons explained below, their motion will be granted.

## I.  Facts[1] and Procedural Background

In 2004, Plaintiff began working as a Certified Nursing Assistant for Jefferson Memorial

Hospital, which later became part of the Mercy Health hospital system, operating under the name

Mercy Hospital Jefferson.  Plaintiff continued working at the hospital under Mercy's ownership,

and, in February 2016, was promoted to manager, or leader[2], of the hospital's cardiac progressive

care unit ("PCU").  In that role, he supervised approximately 50 nurses and other medical staff.

After Plaintiff's promotion to manager, his supervisor was Krista McKenzie, the Director of

Nursing Services ("McKenzie").

---

[1]  The facts were taken from the parties respective Statements of Material Facts and the exhibits attached thereto.
*See* Docs. 48, 54, and 59.
[2]  Managers in the Mercy system are commonly referred to as "leaders."

During 2016, certain concerns about Plaintiff's work performance in his new role as manager began to emerge.  For example, McKenzie's supervisor, Chief Nursing Officer Stacy Blankenship ("Blankenship") believed that Plaintiff was arranging his department's schedule in a way that caused shift staffing challenges.  On November 5, 2016, Blankenship sent an email to McKenzie outlining some of her concerns about Plaintiff's job performance.  She wrote that another employee had informed her[3] that Plaintiff frequently left his shift without providing patient reports, and that on occasion he left work even though he knew the shift was short-staffed. Blankenship wrote that she found this behavior, if true, "super-concerning," as it appeared that Plaintiff's team "felt that he had left them in crisis."  Blankenship stated that she was aware that McKenzie was "having to work very diligently with Drew as he is not being as successful as we would like" in his new managerial position, and she wanted her to have this additional information about his performance.

In December 2016, McKenzie placed Plaintiff on a performance improvement plan ("PIP").  The PIP noted Plaintiff's inconsistent performance, and identified certain patterns of conduct, including (1) Plaintiff needing repeated reminders to complete his job duties, including chart audits, submitting Foley catheter days, narcotic audits, and SAFE events; (2) Plaintiff not meeting expectations around coworker scheduling and the need to ensure that shift schedules were consistent and fair; (3) Plaintiff failing to complete approximately forty-three educational training modules despite repeated reminders to do so; and (4) concerns about Plaintiff's honesty regarding whether he was carrying out his day-to-day duties and managerial responsibilities.  The PIP identified four goals for Plaintiff, including (1) the timely completion of all weekly and monthly expectations, (2) assuring that coworkers' schedules were consistent and met PCU expectations,

---

[3]  Blankenship wrote that the employee said, with respect to Plaintiff not giving necessary patient reports, "[Y]eah, that's just Drew, that's how he has always been.  He never gives report and if he does it's worthless."

(3) completing all "My Education" modules before their due date, and (4) working on "the building of right relationships with [McKenzie] and other members of the leadership team."  McKenzie felt that Plaintiff's performance improved while on the plan, and he successfully completed the PIP by the spring of 2017.  Additionally, in July of 2017, Plaintiff received his annual review for the period from July 2016 through June 2017.  The review was generally positive, and McKenzie noted that Plaintiff had improved in all of the areas included in the 2016 PIP.

Mercy has an annual performance review process called "Accounting of Stewardship" or "AoS."  Pursuant to this process, each unit leader completes a written review of the performance of each of his subordinates, and then meets with each subordinate individually to discuss the review, after which the leader and subordinate sign the review.  Mercy provided trainings regarding the AoS process, and Plaintiff was aware of and encouraged to participate in such trainings.  In 2016, after being promoted to a managerial position in the PCU, Plaintiff completed his subordinates' performance reviews, including meeting with each of them, in a timely manner.

During May 2017, McKenzie held meetings with Plaintiff and his fellow leaders regarding the AoS process, and shared information about trainings available for the process and applicable deadlines for that year's evaluations.  McKenzie had another meeting with Plaintiff on June 5, 2017, to discuss the reviews, and on June 6, 2017, she emailed Plaintiff a timeline for the 2017 AoS process, which included the following information:  (1) on June 1, 2017, the AoS application opened for leaders to begin co-worker[4] evaluations; (2) evaluation meetings were to be conducted during June and July, and should be completed by no later than September 15, 2017; and (3) by October 1, 2017, all evaluations must be complete, meaning that leaders must have met with their co-workers and the evaluation must have been signed by the leader and his subordinate.  Also on

---

[4]   At Mercy, each manager's subordinates are commonly referred to as "co-workers."

June 6, 2017, Alexis Travers ("Travers"), Mercy's Director of Human Resources, emailed to Plaintiff and other leaders a message setting forth the same deadlines for the AoS process.  Leaders at Mercy were also subject to a requirement that they complete a self-evaluation in the AoS system. On June 21, 2017, McKenzie emailed Plaintiff, asking him to complete his self-evaluation, and noting that if he needed any assistance with the process he should let her know.

On June 26, 2017, Travers again emailed Plaintiff and other leaders about the 2017 AoS process, reiterating the timeline and deadlines, and informing them that the HR office had multiple computers available if anyone wished to complete their evaluation in the HR office.  On June 29, 2017, McKenzie emailed Plaintiff to remind him that he only had four weeks remaining to get his evaluations done, and, because it was a busy time of year, offering to allow him to work from home one day per week in order to complete the evaluations in a timely manner.  On July 5, 2017, Mercy Compensation Support emailed Plaintiff a reminder that he had only four weeks left to complete the AoS evaluations, and provided with him with a list of his subordinates whose evaluations had not yet been started.   On Friday, July 14, 2017, McKenzie emailed Plaintiff, inquiring as to what his plan was to complete his evaluations on time, and asking that he provide her with such a plan by the end of the following Monday.

During his employment with the Mercy Health system, Plaintiff took FMLA leave in 2014, 2016, and 2017, each time after the birth of one of his children.  His first such leave was between September 30, 2014 to November 3, 2014.  He again took leave from May 25, 2016, through June 29, 2016.  On August 8, 2016, after returning from his second FMLA leave, Plaintiff received a positive annual review from McKenzie.  Additionally, his 2016 FMLA leave was not mentioned during the December 2016 meeting to discuss his performance improvement plan, and Plaintiff

4

testified at his deposition that he was not aware of any facts that could suggest that McKenzie issued the PIP because Plaintiff has used FMLA leave earlier that year.

In March 2017, Plaintiff told McKenzie that his wife was pregnant again and that he would need FMLA leave later that year for the birth of his child.  The PCU was scheduled to move its patients and staff to another building during the time that Plaintiff would be away on FMLA leave in 2017.  Sometime during late summer of 2017, Plaintiff and McKenzie discussed his upcoming FMLA leave for the birth of his child, and McKenzie expressed concern about him being away for so long during such an eventful time for his unit.

On September 27, 2017, Plaintiff submitted a Leave of Absence Request Form to Mercy's Leave Administration Department asking for FMLA leave to bond with his son from October 2 through November 27, 2017.  This was his first time communicating with Leave Administration about his desire to take FMLA leave in 2017.  If an employee needs FMLA leave for a reason that is foreseeable, such as parental leave upon the birth of a child, Mercy requires that employee to contact Leave Administration at least 30 days' prior to the first expected day of leave.  Plaintiff admits that he submitted his request to Leave Administration only six days before he wanted his FMLA leave to begin.  Plaintiff's child was born on September 29, 2017.  Plaintiff went on leave and claims that he never heard from Mercy again regarding his leave request.  On October 26, 2017, Mercy sent a notice to Plaintiff that his leave would not be designated as FMLA leave because he did not submit required documents within the established timeframe.  However, for reasons that are unclear, Plaintiff did not receive that notice.  Plaintiff additionally asserts that he provided sufficient notice of his need for leave, as he had mentioned to his supervisor in March that he would need FMLA paternity leave later that year.

On September 28, 2017, after Plaintiff went on leave, McKenzie discovered that Plaintiff had not completed 33 of his subordinates' performance reviews for the AoS process.  McKenzie testified that she was "panicked" when she received notice that Plaintiff had left undone so many performance reviews.  McKenzie alerted other employees at Mercy to the situation, who were similarly dismayed.  For example, Alexis Travers, the Director of Human Resources, testified that she was "shocked" to learn of Plaintiff's failure to complete so many evaluations, as she had never encountered such a situation before.  On September 29, 2017, McKenzie called Plaintiff to ask him about the unfinished performance reviews, and he informed her that he had reached out to his subordinates, but he felt that they did not care and failed to follow up, and it was not his responsibility to "chase them down."  On October 9, 2017, Mercy's compensation department contacted Travers asking her to inform Plaintiff that his performance reviews must be completed. Travers wrote them back, informing them that Plaintiff was out on FMLA leave, so there was nothing that could be done about the situation.  She further indicated that they were "in a bad spot with this leader," and that he "will be receiving corrective action."

Other problems with Plaintiff's performance came to light shortly after he left for FMLA leave in 2017.  For example, on September 26, 2017, the day before he went on leave, Plaintiff added inapplicable skillsets to the scheduling profiles of eleven of his subordinates, which caused the system to increase their rates of pay for each shift worked.  A staffing coordinator, Pam Mullin, informed McKenzie of the changes made by Plaintiff, and told McKenzie that she believed Plaintiff inappropriately made the changes in order to benefit Plaintiff's favored subordinates. Mullin undid all the changes that Plaintiff had made to the scheduling system.  Plaintiff testified that he thought his subordinates were qualified for the changes that he made.  However, it is

6

undisputed that McKenzie was informed that the changes were inappropriate, and the changes were in fact incorrect and had to be reversed.

Additionally, during October 2017, while Plaintiff was out on leave, McKenzie discovered that he had failed to give corrective action to several subordinates for attendance issues. Furthermore, on October 2, 2017, during the first week after Plaintiff left on FMLA leave, Michelle Meyer, Mercy's Vice President of Operations emailed Chief Nursing Officer Blankenship about Plaintiff's practice of leaving certain employees off the weekend schedule in the PCU, which in turn caused the unit to be short staffed on multiple occasions. Blankenship testified that she believed Plaintiff's performance failures were "frankly negligence'" and that it was "pretty clear" that Plaintiff could not "function at the level of a nurse manager effectively."

After discovering all of these issues, McKenzie and Blankenship conferred with Human Resources and made the decision to terminate Plaintiff immediately. On October 31, 2017, Travers emailed McKenzie, Blankenship, and Eric Ammons, Mercy's Chief Executive Officer about their decision, writing, "[P]er our conversation, we will terminate Drew Abts on Thursday 11/2 for the following concerns:  manipulation of co-worker schedules in an effort to give them increased incentives, failure to properly document co-worker corrective actions, and also not completing AoSS for his department."

On November 2, 2017, Abts's employment was terminated. Mercy issued a termination letter stating four concerns: (1) not completing performance reviews for 33 out of 45 of his subordinates; (2) not properly documenting co-worker corrective actions; (3) manipulating co-worker schedules in order to give them pay increase incentive; and (4) not following the leave process and being on unapproved leave. All of the performance issues referenced in his termination letter were discovered only after Plaintiff started his FMLA leave. At his deposition,

Plaintiff testified that he believed that he was terminated because he took too much FMLA leave, but he also testified that no one at Mercy ever said anything to him that suggested that his employment was terminated because he took leave.

On October 11, 2019, Plaintiff filed the instant action, alleging that Defendants violated his right to medical leave under the FMLA by interfering with that right, as well as by discriminating against him[5] for exercising rights under the statute.  Defendants filed a motion for summary judgment on all Plaintiff's claims. For the following reasons, the Court will grant Defendants' motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a

---

[1]    Plaintiff's claim in Count I is labeled "FMLA Interference."  However, the Eighth Circuit has instructed that FMLA claims "formerly described as interference claims henceforth shall be called 'entitlement' claims."  *Bosley v. Cargill Meat Solutions Corp.*, 705 F.3d 777, 780 (8th Cir. 2013).  The Court will refer to Plaintiff's claim in Count I, then, as his FMLA entitlement claim. Additionally, Plaintiff labels him claim in Count II as one for "FMLA Retaliation."  However, the substance of this claim appears to lay out the elements of an FMLA discrimination claim, rather than retaliation, and accordingly, the Court will refer to the claim as one for FMLA discrimination.  To the extent that Plaintiff may actually seek to bring an FMLA retaliation claim, Defendants would be entitled to summary judgment on such claim, as Plaintiff makes no allegations that he opposed any practice made unlawful by the FMLA, as would be required to prevail on such a claim.  *Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1005 (8th Cir. 2012).

8

genuine issue for trial. *Id.* at 324. The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(c)(1)(A); *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013).  "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotations omitted).

In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043

## III. DISCUSSION

Plaintiff alleges Defendants[6] violated his rights under the FMLA by depriving him of leave to which he was entitled and by taking adverse action against him for exercising his rights under

---

[6]    Defendants argue that Plaintiff was not actually employed by Mercy Health or Mercy Hospital Jefferson.  In fact, Defendants argue that they do not employ anyone at all, and therefore, cannot be considered employers under the FMLA, and, accordingly, are entitled to summary judgment on this basis. Defendants assert that Plaintiff was actually employed by MHM Support Services, of which Defendant Mercy Health is the sole member.  Mercy Health is also the sole member of Mercy Health East Communities, which is in turn the sole member of Defendant Mercy Hospital Jefferson.  Plaintiff argues that under the FMLA, employment status is more properly determined by the economic realities between the parties rather than the precise corporate structure of the relevant entities.  Here, there is a rather muddled picture concerning which Mercy affiliated entity may actually have been Plaintiff's employer for FMLA purposes:  MHM Support's name appeared on Plaintiff's paystubs, but Mercy Health appears to have handled Plaintiff's leave request, and Mercy's human resources and legal department were closely involved in the termination decision.  However, the Court need not wade further into this issue, as,

9

that statute.  The FMLA entitles any "eligible employee" to a total of twelve work weeks of leave during any twelve-month period under certain conditions.  29 U.S.C. § 2612(a)(1); 29 C.F.R. § 825.112(a).  The FMLA also protects workers who exercise their rights under the statute.  It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. § 2615(a)(1).  The Eighth Circuit recognizes three distinct claims brought under the FMLA: "entitlement" claims; "retaliation" claims; and "discrimination" claims.  *Brown v. City of Jacksonville*, 711 F.3d 883, 890-91 (8th Cir. 2013); *Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1005 (8th Cir. 2012). Plaintiff brings an entitlement claim, asserting that Mercy wrongfully denied his FMLA leave request and then terminated him while on leave.  He also asserts FMLA discrimination, alleging that Mercy terminated him because of his decision to take FMLA leave in 2017.

An employee may bring an entitlement claim when his employer "refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act."  *Pulczinski*, 691 F.3d at 1005.  "An employee proceeding on this theory need not show that an employer acted with discriminatory intent."  *Id*.  However, that does not mean that an employee may not be terminated while on leave; the FMLA is not a strict liability statute.  *See Chappell v. Bilco Co*., 675 F.3d 1110, 1115 (8th Cir. 2012) ("Although an employee 'can prove interference with an FMLA right regardless of the employer's intent,' the FMLA 'is not a strict-liability statute.")  (quoting *Estrada v. Cypress Semiconductor, Inc*., 616 f.3d 866, 871 (8th Cir. 2010)).  Therefore, if an employee had lawful reason to discharge an employee, the FMLA will not shield that employee from such discharge while he is on leave.  "As long as an employer can show a lawful

---

assuming arguendo that Defendants were Plaintiff's employers for purposes of the FMLA, they are nevertheless entitled to summary judgment on the merits of Plaintiff's claims, as further discussed in this decision.

reason," *i.e.*, a reason not related to unlawful interference with or discrimination due to taking FMLA leave, "the employer will be justified to interfere with an employee's FMLA leave rights." *Throneberry v. McGee Desha Cnty. Hosp.,* 403 F.3d 972, 979 (8th Cir. 2005) ("[E]very discharge of an employee while [ ]he is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge during FMLA leave by no means demand an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights.").

An employee may sue for discrimination when his employer "takes adverse action against him because he exercise[d] rights to which he is entitled under the FMLA." *Id*. "In this scenario, the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment. An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA." *Id*. The Eighth Circuit considers FMLA discrimination claims under the familiar *McDonnell Douglas* burden-shifting framework applicable to Title VII cases. *Id*. at 10007. Under that framework, because Plaintiff does not identify direct evidence of discrimination in this case, he may preclude summary judgment only if he can create an inference of discrimination by establishing a prima facie case. If he does so, the burden then shifts to Mercy to articulate a legitimate, non-discriminatory reason for his termination, and if Mercy does so, the burden reverts back to Plaintiff to show that the proferred reason for his termination is merely a pretext for unlawful discrimination. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011).

### A. FMLA Entitlement Claim

An entitlement claim arises when an employer refuses to authorize leave under the FMLA, or takes other action to avoid responsibility under the Act. *Pulczinski*, 691 F.3d at 1005; *see also Estrada*, 616 F.3d at 871 (An FMLA entitlement claim occurs "when an employer's action deters or attached negative consequences to an employee's exercise of FMLA rights."). "An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). An entitlement claim under the FMLA cannot succeed unless the plaintiff can show that she "gave h[er] employer adequate and timely notice." *Chappell v. Bilco Co.,* 675 F.3d 1110, 1116 (8th Cir. 2012). Failing to do so results in a loss of an FMLA entitlement. *See Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 944 (8th Cir. 2019) (employee "lost any right that she had to FMLA leave" because she did not contact employer's leave administrator about her request); *see also Bosley v. Cargill Meat Sols. Corp.*, 705 F.3d 777, 780 (8th Cir. 2013) (noting the FMLA's "rigorous notice standard").

Defendants argue that they are entitled to summary judgment on the entitlement claim because Plaintiff was not entitled to leave under the Act, as he submitted to Mercy's Leave Administration Department his request for leave only six days before he wanted his leave to begin, rather than the required thirty days' notice. Plaintiff argues that he provided adequate notice when he informed his direct supervisor, McKenzie, in March of 2017, that he would require FMLA leave later that year.[7] Plaintiff also notes that when he took FMLA paternity leave in 2014 and 2016 he

---

[7] Plaintiff also makes much of the fact that Defendants requested that he submit a medical Healthcare Certification form, rather than a birth certificate, to support his claim for FMLA paternity leave. Defendants admit that this request was erroneous, but it is immaterial in any event, as no attempt was made to enforce the request and it had no connection to Plaintiff's termination.

similarly provided informal notice to his supervisor, followed by an official leave request submitted to Leave Administration less than thirty days prior to the start of his leave.

Even if the Court assumes, without deciding, that Plaintiff provided adequate notice of his need for FMLA leave, and was thus entitled to such leave, Defendants are nonetheless entitled to summary judgment on Plaintiff's claim. This is so because even if Plaintiff could make a showing of interference, Defendants have shown that he was discharged for reasons unrelated to his exercise of FMLA rights. *See Ballato v. Comcast*, 676 F.3d 768, 772 (8th Cir. 2012) ("An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than [ ]he did before taking the leave.") (quoting *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010). "If the employer can prove that it would have terminated the employee had the employee not exercised FMLA rights, the employer will not be liable." *Id*.

Plaintiff was discharged due to his failure to meet multiple managerial expectations. He failed to complete dozens of written performance reviews for his subordinates, despite repeated reminders of the need for him to do so. He failed to discipline his subordinates for attendance issues, and he manipulated the scheduling system in a way that created unauthorized pay increases for some of his subordinates. Plaintiff does not dispute that these performance problems were both real and consequential—merely because he believed that he should not have been terminated for these reasons is immaterial. McKenzie and Blankenship testified that they could no longer tolerate Plaintiff's managerial shortcomings, and were so unhappy about the performance issues that came to light after he went on leave that they decided to discharge him immediately. The FMLA does not preclude employers from taking disciplinary action against an employee for performance issues unrelated to his request for leave, and Defendants are entitled to summary judgment on Plaintiff's FMLA entitlement claim.

13

### B. FMLA Discrimination Claim

A discrimination claim arises under § 2615(a)(1) "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Pulczinski*, 691 F.3d at 1006. Plaintiff maintains that he was terminated because he exercised his right to take FMLA leave. Absent direct evidence of discrimination, the Court will evaluate Plaintiff's FMLA discrimination claim under the *McDonnell Douglas* burden-shifting analysis. Under this framework, Plaintiff must first establish a prima facie case of illegal discrimination by showing that he engaged in activity protected under the FMLA, suffered a materially adverse employment action, and that a causal connection existed between his actions and the adverse employment action. *See Pulczinski*, 691 F.3d at 1007. Then, the burden "shifts to the employer to articulate a legitimate, non-retaliatory reason for its action." *Id*. If it does so, then "the employee must then identify evidence sufficient to create a genuine issue of material fact whether the employer's proffered explanation is merely a pretext for an unlawful decision." *Id*.

Plaintiff argues that the mere fact that he was fired while he was on FMLA leave establishes a causal connection between his leave request and his termination. Plaintiff asserts that the temporal proximity between him taking leave and his dismissal establishes discrimination. Defendants argue that this is not sufficient evidence to create an issue of fact regarding whether there is a causal link between his use of FMLA leave and his termination, as required to establish a prima facie case of discrimination. Indeed, Defendants argue that the timeframe around his termination would seem to support the opposite conclusion. If Defendants were intent on discriminating or retaliating against Plaintiff for utilizing FMLA leave, he could have been terminated as early as March of 2017, when he initially informed McKenzie that he needed leave, or even earlier, after any of the prior times that he took FMLA leave. *See Sisk v. Picture People,*

14

*Inc.*, 669 F.3d 896, 900 (8th Cir. 2012) (In calculating temporal proximity in FMLA cases, the Eighth Circuit "looks to the date an employer knew of an employee's use (or planned use) of FMLA leave, not the date the leave ended."). Here, Plaintiff was terminated after eight months had passed since his initial request for leave, an interval during which he received a positive performance review from McKenzie. *See EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 973 (8th Cir. 2014) (interval of two months is too long to support a causal link between FMLA leave and termination). Simply because the termination occurred while he was on leave does not establish causation. *See Throneberry,* 403 F.3d at 979 (The "mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights."). Furthermore, the timing of Plaintiff's termination supports Defendants' assertion that he was discharged for performance issues, as McKenzie and Blankenship decided to fire Plaintiff immediately after discovering the alleged deficiencies.

However, even if Plaintiff could establish the necessary causal link for a prima facie case, he has not shown that Defendants' legitimate, non-discriminatory justification for his adverse employment actions was pretextual. A plaintiff may establish an issue of material fact regarding pretext by "show[ing] that the employers' explanation is 'unworthy of credence . . . because it has no basis in fact," or 'by persuading the court that a prohibited reason more likely motivated the employer.'" *Brown v. Diversified Distribution Sys. LLC*, 801 F.3d 901, 909 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1047). "Ultimately, the plaintiff must 'show[ ] that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Nelson v. USAble Mut. Ins. Co*., 918 F.3d 990, 993 (8th Cir. 2019) (quoting *Wallace v. DTG Operations, Inc.,* 442 F.3d 1112, 1120 (8th Cir. 2006). Additionally, the "critical inquiry . . . is

15

not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *Liles v. C.S. McCrossan, Inc*., 851 F. 3d 810, 821 (8th Cir. 2017)

Here, Defendants' proffered justifications plainly have a legitimate factual basis—nothing in the record indicates that McKenzie and Blankenship lacked a good faith belief that Plaintiff was guilty of the conduct justifying discharge. McKenzie and Blankenship testified regarding the multiple ways in which they found Plaintiff's performance deficient, and Plaintiff admits that he did not complete his subordinates' performance reviews, document appropriate corrective actions regarding attendance, and made the scheduling system alterations that increased some subordinates' compensation. Neither the fact that he may feel his performance was satisfactory, nor his assertion that he made the scheduling changes with the belief that they were appropriate, creates doubt concerning whether Defendants genuinely found his performance lacking. And if McKenzie and Blankenship were mistaken in their assessments, that does not change the legal analysis. "Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices." *Edmund v. MidAmerican Energy Co.,* 299 F.3d 679, 685-86 (8th Cir. 2002).

Conversely, Plaintiff has offered nothing to indicate that his termination was the result of discriminatory intent, rather than the result of Defendants' determination to fire him for managerial shortcomings. He does not even argue that the reasons offered by Defendants were pretextual. Rather, he seems to argue that if Defendants had found his leave request timely and allowed him to return to work, he would not have been dismissed. Therefore, Plaintiff argues, the actual reason for his termination was solely his FMLA leave. As to the three performance related reasons for dismissal outlined in his termination letter, Plaintiff argues that while this alleged misconduct may

16

have caused him to be "punished or demoted," it was "not guaranteed that Defendants would have terminated [him] because of the alleged performance issues." Doc. 53 at 25.  It is not clear why Plaintiff believes that he would not have been dismissed if only he had been allowed to return from leave.  In any event, the pertinent question is not whether Defendants made a good, fair, or correct decision, but rather, whether Defendants did not *actually* believe that his performance was deficient.  *Schaffhauser v. United Parcel Serv., Inc*., 794 F.3d 899, 903 (8th Cir. 2015).

While Plaintiff may believe that the decision to terminate him was harsh or misguided, the Court is concerned only with whether Defendants discharged him *because* he exercised his rights under the FMLA.  *See Ebersole v. Novo Nordisk, Inc*., 758 F.3d 917, 927 (8th Cir. 2014) (Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions.") (quoting *Johnson v. Ready Mixed Concrete Co*., 424 F.3d 806, 812 (8th Cir. 2005); *Edmund v. MidAmerican Energy Co.,* 299 F.3d 679, 685-86 (8th Cir. 2002) (A plaintiff "must do more than merely raise doubts about the wisdom and fairness of the opinions of him held by his superiors . . . It must create a real issue as to the genuineness of those perceptions.").  Plaintiff of course feels that he should not have been terminated for his performance issues.  However, he fails to cast doubt on the legitimacy of these performance deficiencies, or call into question McKenzie and Blankenship's genuine belief that his performance was unacceptable.   Indeed, Plaintiff seems to admit the genuineness and seriousness of these issues by acknowledging that he could have been punished or demoted had he not been fired.  Plaintiff's belief that Defendants should have dealt with him less harshly is irrelevant, as it does not undermine the fact that there is no evidence that raises a reasonable inference that Defendants terminated Plaintiff *because* he exercised his rights under the FMLA, rather than *because* of the performance issues.

17

Defendants have proffered legitimate, nondiscriminatory reasons for Plaintiff's termination, and Plaintiff has not shown that the reasons proffered were but a pretext for discrimination.  As such, Defendants are entitled to summary judgment on Plaintiff's FMLA discrimination claim as well.

## IV. CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment on both Counts of Plaintiff's Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that all other outstanding motions in this matter are **DENIED** as moot.

The Court will issue a separate judgment consistent with this Memorandum and Order.

Dated this 2nd day of June, 2021.

/s/Jean C. Hamilton

JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE